*219 OPINION
AMBRO, Circuit Judge.
A jury found Anthony Alston guilty of interfering with interstate commerce by robbery (in violation of 18 U.S.C. § 1951), carrying and using a firearm during a crime of violence (in violation of 18 U.S.C. § 924(c)), and possessing a firearm as a convicted felon (in violation of 18 U.S.C. § 922(g)). The District Court sentenced him to 30 years’ imprisonment. Alston now challenges his conviction and sentence. We affirm both.[1]
I.
This case arises from a robbery of a jewelry store, owned by Alex Patlakh, in December 2003. Patlakh was serving Alston at the store counter when a third man buzzed to enter the store. This third man entered and pointed a gun at Patlakh, but fled when Patlakh told him the police had been notified. Patlakh then accused Alston of knowing the third man, pulled out a gun, and ordered Alston to the floor. According to Patlakh, Alston grabbed money from the counter and started shooting at Patlakh, striking him in the arm. Patlakh also fired his gun, injuring Alston. When Patlakh ran out of ammunition, he ran to the back of the store to get another gun. Alston followed and the two continued fighting.
The police arrived to find Alston throwing money out of his pockets, and Patlakh holding a gun. In Alston’s pockets, the police found a phone bill addressed to Pat-lakh and over $650 cash. In a trash can at the back of the store, they found a nine-millimeter gun that had been stolen from Alston’s landlord. The police later determined that three of the cartridge cases found at the scene came from this gun.
At trial, Alston testified that he was an innocent bystander, caught in the crossfire between Patlakh and the third man. Alston claimed he did not have a gun at the store, did not take money from the counter, and that the cash found in his pockets was his. As for the money he was throwing out of his pockets when the police arrived, he claimed that Patlakh had stuffed it into Alston’s jacket to frame him. The jury found him guilty.
II.
Alston makes three primary arguments on appeal: (1) the Government exercised peremptory challenges on the basis of race; (2) a witness’s improper reference to Alston’s parole status warranted a mistrial; and (3) the District Court abused its discretion in excluding evidence that the gun used by Patlakh had been stolen. We address each in turn.[2]
A.
Alston argues that the Government struck potential jurors from the jury pool on account of their race in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Specifically, Alston challenges the strikes of Jurors 38 *220 (a black female) and 136 (a black male). (App. 120, 233.)
Under the three-step Batson procedure, (1) a defendant can establish a prima facie case for unlawful discrimination by pointing to evidence that gives rise to an inference thereof; (2) the burden shifts to the Government to state race-neutral reasons for exercising its strikes; and (3) the District Court must then decide whether the defendant has shown purposeful discrimination. Batson, 476 U.S. at 96-98, 106 S.Ct. 1712.
Here, the Court bypassed step one and asked the Government to state its grounds for exercising the strikes.[3] (App. 233.) The Government explained that it struck Juror 38 because she frowned throughout jury selection and appeared to give the prosecutor “a dirty look” when he made eye contact with her. (App. 234.) It struck Juror 136 because he had not “crack[ed] a smile” or chatted with the other jurors, and was staring at the prosecutor. (Id.) The Court credited these explanations, ruling that it was “satisfied with [the prosecutorj’s recital as to the Jury.” (App. 235.)
Alston argues that the District Court was required to make specific find-mgs concerning the jurors’ demeanors, but failed to do so. However, it is evident the Court credited the prosecutor’s explanation as to both jurors, and we give deference to this decision. See Hernandez v. New York, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (“[Evaluation of the prosecutor’s state of mind based on demeanor and credibility lies peculiarly within a trial judge’s province.”) (internal quotation marks and citation omitted). Before the District Court, Alston did not challenge the Government’s race-neutral reasons. He bore the burden of persuading the Court that the Government’s reasons were pretextual, yet he made no attempt to do so (and does not on appeal). In this context — where one race-neutral reason was given and the defense did not argue the reason was pretextual— we cannot say the Court erred in failing to comment specifically on the jurors’ de-meanors.[4] Thus, we affirm the Court’s rejection of Alston’s Batson claim.
B.
The District Court ruled in limine that the Government could not introduce at trial evidence that Alston was on parole when he was arrested for the robbery. Howev *221 er, a Government witness referenced Alston’s parole status during her testimony, which Aston argues warranted a mistrial. “We review the denial of a motion for a mistrial based on a witness’s allegedly prejudicial comments for an abuse of discretion.” United States v. Lore, 430 F.3d 190, 207 (3d Cir.2005).
The improper comment came during the Government’s direct examination of Aston’s landlord, from whom the gun used in the robbery was stolen:
Q. And how did — how was it that [the defendant] became a tenant of yours? Can you just describe what happened?
A. Uhm, let’s see, during the time he was working at Spaghetti Warehouse he was saying that he was on parole or something like that, he had—
Defense Counsel: Objection, Your Hon- or.
The Witness: I’m sorry.
Defense Counsel: Can I see the Court at sidebar?
The Court: Jury will disregard that statement. We have no foundation anyhowf,] so it’s to be disregarded.
(App. 517.) At the end of the direct examination, defense counsel asked for a conference at sidebar and moved for a mistrial based on the witness’s statement. (App. 527-28.) The Court denied the motion, reasoning that the Government did not intend to elicit the testimony, the response was an “unfortunate consequence,” a curative instruction had been given, and the statement did not taint the entire case. (App. 529-30.)
Three factors guide our review: “(1) whether [the witness’s] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury; (2) the strength of the other evidence; and (3) curative action taken by the district court.” Lore, 430 F.3d at 207. Applying these factors, we have no trouble concluding the landlord’s remark did not warrant a mistrial. First, the remark was not “pronounced and persistent,” but instead a singular reference. Second, the evidence against Aston was strong: a gun used to fire several shots during the robbery had been stolen from Aston’s landlord and was found in a trash can in the back of the store (where Aston admits the third man did not go); Aston was seen throwing money from his pockets when the police arrived; and the police found Pat-lakh’s telephone bill in Aston’s pockets, along with a large amount of cash. Moreover, the jury was already aware that Alston had a criminal history, as it was an element of the felon-in-possession charge. Third, the Court immediately gave a curative instruction, and noted that the witness’s statement was without foundation. Thus, we easily conclude the Court did not abuse its discretion in denying a mistrial.
C.
At trial, Patlakh testified that he pm-chased his gun about ten years earlier from a gun store in Philadelphia. Aston sought to present evidence, through testimony from the purported registered owner of the gun, a Mr. Muto, that this gun had been stolen in 1996 from Muto’s truck.[5] The Court did not allow the evidence, a ruling we review for abuse of discretion. See United States v. Saada, 212 F.3d 210, 220 (3d Cir.2000).
On appeal, Aston argues that this testimony would have (1) established Patlakh’s motive to lie about what happened in the jewelry store (to avoid prosecution for possession of a stolen gun), and (2) sup *222 ported “Mr. Alston’s description of [Pat-lakh] as an aggressive vigilante who had attacked Mr. Alston for no reason.” (Appellant’s Br. 25.) We do not agree, as the links needed to reach these conclusions are too tenuous. As the Government pointed out at trial, Muto did not know who had stolen his gun or what happened to the gun after it was stolen. (App. 608.) Accordingly, even if Muto had been permitted to testify that his gun was stolen, that testimony would not have established that Patlakh stole the gun or that he knew the gun was stolen. (App. 609.) Moreover, Alston has not explained how Patlakh’s alleged possession of a stolen gun supports his (Alston’s) theory that Patlakh was an “aggressive vigilante.” Thus, we cannot conclude the Court abused its discretion in excluding this evidence.
For these reasons, we affirm Alston’s conviction and sentence.

. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

. Alston's other two contentions — that the jury instruction on interstate commerce was erroneous, and that his Fifth and Sixth Amendment rights were violated when the District Court sentenced at the mandatory minimum based on facts not found by a jury — are raised only to preserve them for possible Supreme Court review. He concedes they are foreclosed by, respectively, United States v. Urban, 404 F.3d 754 (3d Cir.2005), and Harris v. United States, 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). See also Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). Therefore, we do not discuss these claims further.

. "[A]ny issue regarding the existence of a prima facie showing of discrimination becomes moot where, as in this case, the prosecutor offers an explanation of the peremptory challenge before the district court has expressly addressed the prima facie issue.” United States v. Uwaezhoke, 995 F.2d 388, 392 (3d Cir.1993) (alteration and quotation marks omitted).

. Alston's reliance on Snyder v. Louisiana, 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), is unpersuasive. There, the Government gave two race-neutral reasons for striking a juror — demeanor and student-teaching obligations — and the trial court denied the Batson claim without explanation. Id. at 478-79, 128 S.Ct. 1203.- The Supreme Court reversed because it could not determine from the record which of the two neutral reasons the trial court accepted. See id. at 479, 128 S.Ct. 1203 (because “the record d[id] not show that the trial judge actually made a determination concerning [the juror’s] demeanor,” the Court could not "presume that the trial judge credited the prosecutor's assertion that [the juror] was nervous”).
Unlike in Snyder, we properly may "presume that the trial judge credited the prosecutor's assertion” regarding the jurors' demean-ors, because demeanor was the only race-neutral reason given. Id. (Further, we note that defense counsel in Snyder disputed both of the Government’s explanations, id. at 478, 128 S.Ct. 1203, whereas here defense counsel did not dispute the prosecutor's explanation at all.)

. Alston’s brief to us asserts the District Court prohibited him from introducing this evidence through a "testifying ATF agent,” but the record shows the defense attempted to introduce the testimony through Mulo. (App. 606.)